CHARLES J. SCHUCK, Judge.
Frank T. Marshall, the claimant, engaged in the wholesale merchandise business, was severely, and perhaps permanently, injured by a collision with a state owned and operated road truck, while he was proceeding south toward the city of Huntington in his truck on route no. 2, commonly known as the Ohio River Road. The accident occurred on the eighth day of October 1942 at about 8:30 o’clock in the morning, and at or about what is known as Clutts store, near Greenbottom in Cabell county, West Virginia. The highway was dry, and while there seems to be some question as to fog affecting visibility on different parts of the road, an examination of the record fairly discloses that there was no fog to obstruct the view of a driver going north or south on the highway at the time and place of the accident. In fact, the driver of the state truck himself testified (record p. 58) that there was no fog at the place of the accident at the time of its happening. The *207 testimony further shows that the highway is practically level for a considerable distance both north and south of where the collision took place. The witness Ellis, a state trooper, testified (record p. 80) that one could see 200 or 300 feet “or maybe further.” The state truck was loaded with stone, and truck and load together made a weight of approximately 5 tons, while claimant’s truck, together with his load, weighed between IV2 and 2 tons. The highway was 16 feet wide at the place of collision and had a berm and accessible driveway on both sides thereof, varying in width from 8 to 12 feet.
The claimant testified that he was driving at a lawful and reasonable rate of speed; that the state truck, going in the opposite direction, and without any apparent reason or warning to him, was driven to the left of the highway and directly in front of claimant’s truck and so near to his own truck that it was impossible to stop, thus causing the collision by which his truck was demolished and causing as well the injuries to him of which he complains.
The state truck driver disputes and contradicts this testimony and maintains that claimant’s truck was driven on his (cláimant’s) left side of the road and directly in the path of the oncoming state truck.
Under all of these circumstances we are obliged to look for aid to the relative position of the trucks immediately after the collision for an answer to the question of which one of the drivers was negligent, and consequently whether or not an award should be made.
The trooper in question, immediately upon his arrival at the scene of the accident, noted the position of the trucks (which had as yet not been moved) and has presented to this court what is known as state’s exhibit No. 1, showing that the heavier state road truck was entirely off the highway to the left thereof; in other words on the opposite side from which the state truck was being driven at the time, and that it was *208 facing south, whereas claimant’s truck was found to be on the highway on the right or proper side and turned north, or likewise opposite in the direction from which he was driving at the time. Taking into consideration the relative situation of the vehicles, their relative weights, and the positions immediately after the accident took place, it would appear that the stale truck was driven to the left of the road or the opposite side from which it was traveling at the time, and it would appear further that the state truck driver’s natural inclination to avoid the collision would have been to drive to his right, on which there was a sufficient berm and driveway, in attempting to get out of the way of claimant’s car, if the latter car had been on the wrong side of the road and traveling south on the left side instead of the right side of the highway. These facts, considered in the light of the further fact that there was no interference with the visibility of the drivers, and that the state truck driver could see several hundred feet ahead, and that there was no obstruction of any kind, constrain us to adopt the opinion that the state truck driver was negligent and that his negligence caused the accident and the injuries to the claimant of which he complains.
This conclusion is further sustained by the witness Gill who testifies that he was sitting on the steps of the Clutts store at the time, watching the state trucks drive by, and that these trucks were not very far apart, and that he thought there was a state truck immediately ahead of the truck involved in the collision, and that he “imagines” there were more than two or three such trucks ahead of the said state truck (record p. 103). If this testimony can be relied on it would necessarily preclude the idea that the claimant could have driven to his left side of the highway and been seen only 25 feet away for the first time just previous to the collision. Gill was presented as a witness by the state.
Having determined that the driver of the state truck was negligent, and that, consequently, the state -is liable, the question now presents itself as to how seriously the claimant was *209 injured. Immediately after the collision he was removed to the Huntington Memorial hospital, at Huntington, where he was treated for his injuries by Dr. H. D. Hatfield. Dr. Hatfield testifies that at the time claimant was admitted to the hospital on October 8, he had a concussion of the brain and contusions of his entire body; that he was complaining a great deal of pain in the abdomen, and that this pain perhaps had been caused by-tearing loose some adhesions from two previous operations, claimant having been theretofore operated on for gall bladder trouble. It was found further that claimant had a compound fracture of the left knee, and that his condition was such that he could not be operated on for a period of two weeks after his admission to the hospital; that his left leg is now about one and a half inches smaller than his right limb; that he has not regained muscular control of the said limb; that he has not been well since the accident and has lost considerable weight; that he suffers continuously from nausea and is not able to take food, and that thereby it is the doctor’s opinion that he has been unable to rebuild his strength and regain his physical condition back to the point where it was before he sustained his injuries and that in his judgment the claimant has a permanent disability of his left limb, and that by reason of the tearing loose of the adhesions, following his first and second operations his stomach is not permitted to function properly and must be emptied at times to relieve the pain and nauseous condition; that he was confined in the hospital for approximately three weeks and that it took about six months for the patella to heal and that in the opinion of the doctor it will never again be normal. The claimant’s medical and hospital bills amount to approximately $500.00. He is sixty-three years of age, and taking all of these facts into consideration, together with the damages to his truck, we are of opinion that an award of three thousand dollars ($3000.00) should be made, and recommend the same to the Legislature accordingly.